IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| GREGORY D. RICHARD, JR., | CASE NO. 3:23-cv-599 |
| Petitioner, | DISTRICT JUDGE BRIDGET MEEHAN BRENNAN |
| vs. | |
| WARDEN DOUGLAS FENDER, | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| Respondent. | **REPORT & RECOMMENDATION** |

Petitioner Gregory D. Richard, Jr. has filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Richard is in custody at the Warren Correctional Institution[1] and challenges his conviction and sentence in the case *State v. Richard*, Marion County Court of Common Pleas, Case No. 2018 CR 0150. The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Court deny Richard's Petition.

**Summary of facts**

In habeas corpus proceedings brought by a person under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that

---

[1] Respondent asserts that Chae Harris is the Warden of the Warren Correctional Institution. Doc. 33, at 1 n.1. As such, Warden Harris is the proper Respondent. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

presumption by clear and convincing evidence. *Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012).

The Ohio Court of Appeals for the Third Appellate District summarized the facts underlying Richard's conviction as follows:

> {¶2} This case stems from a series of drug-related events, including the April 2016 overdose of Halee Hull ("Hull") and the October 17, 2017 overdose death of Todd Thompson ("Thompson") in Marion County. On April 5, 2018, the Marion County Grand Jury indicted Richard on Count One of trafficking in heroin in violation of R.C. 2925.03(A)(1), (C)(6), a fifth-degree felony, and Count Two of involuntary manslaughter in violation of R.C. 2903.04(A), a first-degree felony. (Doc. No. 1). However, because he was incarcerated in federal prison on another case, he did not appear for arraignment in Marion County until June 17, 2019. (Doc. No. 19). When he appeared for arraignment, he entered pleas of not guilty to the indictment. (*Id.*).

*State v. Richard,* 2021-Ohio-2980, 2021 WL 3855301, at *1 (Ohio Ct. App. Aug. 30, 2021) (footnote omitted).

**Procedural background**

*Subsequent trial court proceedings*

On June 19, 2019, the Marion County grand jury filed a superseding indictment that charged Richard with a second-degree felony of corrupting another with drugs, Ohio Rev. Code 2925.02(A)(3), with a forfeiture specification; a fifth-degree felony of trafficking in heroin, Ohio Rev. Code 2925.03(A)(1)(c)(6), with a forfeiture specification; and a first-degree felony of involuntary manslaughter, Ohio Rev. Code 2903.04(A). Doc. 9-1, at 9–10.

Richard, through appointed counsel, pleaded not guilty to the charges. *Id*. at 11.

Meanwhile, the trial court had set a jury trial for July 2, 2019, and the State filed a motion to continue trial. Doc. 9-1, at 12. The trial court denied the State's motion. Doc. 9-1, at 22–26. The State filed a motion for reconsideration, arguing that a substantive witness was unavailable for the July 2 trial date but would be available by July 15. *Id*. at 27–32. Richard opposed the State's motion. *Id*. at 36–38. On July 2, 2019, the trial court granted the State's motion, but stated that due to a previously scheduled trial, the court could not hold the trial until "later in July." *Id*. at 39. The court tolled Richard's speedy trial rights until the rescheduled trial date, *id*., and then reset trial for July 30, 2019, *id*. at 40. The court wrote that while the parties agreed to the July 30 trial date and Richard waived his speedy trial right until then, he did so "without waiving any argument he may wish to make with regard to the fact that the trial of this case was not commenced on or before July 3, 2019." Doc. 9-1, at 40.

On July 11, 2019, the Marion County grand jury filed a second superseding indictment that charged Richard with one count of the first-degree felony of engaging in a pattern of corrupt activity, Ohio Rev. Code 2923.32(A)(1); seventeen counts of fifth-degree felony trafficking in heroin charges, Ohio Rev. Code 2925.03(A)(1)/(C)(6); three second-degree felony corrupting another with drugs charges, Ohio Rev. Code 2925.02(A)(3); two

3

first-degree felony involuntary manslaughter charges, Ohio Rev. Code 2903.04(A); one fourth-degree felony trafficking in heroin charge, Ohio Rev. Code 2925.03(A)(2)/(C)(6); and one prior federal drug conviction specification. Doc. 9-1, at 41–46. Richard pleaded not guilty to the charges. *Id*. at 47.

Richard filed three motions to dismiss due to: preindictment delay; post-indictment delay; and the fact that fifteen counts in the second superseding indictment were based on Richard's federal drug convictions. Doc. 9-1, at 49–61. The State opposed Richard's speedy trial motions, but conceded that the fifteen counts Richard identified were barred and should be dismissed. *Id*. at 71–90. On July 25, 2019, The trial court dismissed the fifteen counts, with prejudice. *Id*. at 91. And on July 29, the trial court overruled Richard's other motions to dismiss. *Id*. at 92–106.

Meanwhile, on July 26, Richard filed a motion requesting relief from prejudicial joinder, seeking separate trials on the charges pending against him. Doc. 9-1, at 109. The State opposed Richard's motion, *id*. at 113, 117, and Richard filed a reply, *id*. at 122. On July 29, after a hearing, the trial court denied Richard's motion for separate trials. *Id*. at 125.

Also on July 29, 2019, the trial court granted Richard's request for a continuance to prepare for trial. Doc. 9-1, at 129. Trial was reset for October 22, but on October 15, Richard requested that new counsel be appointed due to "a breakdown in communication." *Id*. at 130, 131. The court granted Richard's request and appointed new counsel. *Id*. at 132. Richard waived his right to

speedy trial from October 15 until a date that trial was to be rescheduled. *Id.* at 130.

Trial was reset for February 11, 2020, but was continued at Richard's request, and the court tolled Richard's speedy trial time until the rescheduled trial date. Doc. 9-1, at 133. On April 13, the State filed a motion to continue the scheduled trial date due to Ohio's Covid-19 state of emergency. *Id.* at 134. The trial court granted the motion, continued Richard's jury trial to May 18, 2020, and tolled the speedy trial time until then. *Id.* at 145.

Next, Richard asked to continue the May 18 trial due to various Covid-19-related reasons that his counsel identified. Doc. 9-1, at 152. The trial court granted Richard's motion, tolled the speedy trial time, and continued the trial date. *Id.* at 154. Trial was reset for August 11, 2020. Tr. 173.

On August 10, the State filed a motion to dismiss two counts and amend the form of the indictment to list the remaining counts in numeric order. Doc. 9-1, at 155. Richard agreed, and the court amended the second superseding indictment to reflect the changes. *Id.* at 158.

Also on that day, Richard filed a renewed motion to dismiss the second superseding indictment based on statutory and constitutional speedy-trial violations, Doc. 9-1, at 161, which the trial court denied, Doc. 27-2, at 23.

On August 11, 2020, the case proceeded to trial. Doc. 9-1, at 173. The jury found Richard guilty of one trafficking-in-heroin count (count 4) and two corrupting-another-with-drugs counts (counts 5 and 8), and not guilty on the

remaining counts. *Id*. At sentencing, the court sentenced Richard to eleven months in prison on count 4, five years in prison on count 5, and seven years in prison on count 8. *Id*. at 174. The court ordered the sentences in counts 4 and 5 to run concurrently, and consecutive to the sentence in count 8, for an aggregate sentence of twelve years in prison, plus mandatory fines and currency forfeiture. *Id*. Richard filed a motion for an acquittal or new trial, *id*. at 177, which the court denied, *id*. at 173.

*Direct appeal*

In October 2020, Richard filed in the Ohio court of appeals a timely notice of appeal. Doc. 9-1, at 185. In his brief, Richard, through new counsel, raised the following assignments of error:

> 1. Appellant's rights to a speedy trial under the Sixth Amendment and the Ohio Constitution were violated by post-indictment delay in regard to count seven, corrupting another with drugs.
>
> 2. Appellant was unfairly prejudiced by the joinder for trial three separate incidents of alleged drug trafficking.
>
> 3. Appellant's state and federal constitutional rights to due process were violated because the conviction in count seven for corrupting another with drugs was not supported by sufficient evidence.
>
> 4. The weight of evidence does not support a conviction on count seven for corrupting another with drugs.
>
> 5. The sentencing entry improperly imposed mandatory prison sentences because the prison

6

> sentences were not imposed as mandatory during the sentencing hearing.[2]

Doc. 9-1, at 195. On August 30, 2021, the Ohio court of appeals affirmed the trial court's judgment and sentence. *Id.* at 294; *Richard*, 2021 WL 3855301.

In October 2021, Richard timely filed a pro se appeal to the Ohio Supreme Court. Doc. 9-1, at 336. In his memorandum in support of jurisdiction, Richard raised the same grounds that he raised to the Ohio court of appeals. *Id.* at 339. In December 2021, the Ohio Supreme Court declined under its rule of practice 7.08(B)(4) to accept jurisdiction of Richard's appeal. *Id.* at 404.

*State post-conviction petition*

In June 2021, while his direct appeal was pending, Richard filed in the trial court a pro se petition for post-conviction relief. Doc. 9-1, at 405. Richard alleged that trial counsel was ineffective for: (1) failing to investigate facts at Richard's arraignment that could have led to successful motion to dismiss; (2) failing to investigate prosecutorial misconduct at his arraignment; (3) failing to recognize a speedy trial violation regarding the time the State notified Richard of the charges against him; and (4) failing to present facts showing that Richard was denied the right to counsel at arraignment. *Id.* at 411, 413, 414, 416. In September 2021, the trial court overruled Richard's petition based on res judicata and, alternatively, on the merits. *Id.* at 462–69.

---

[2]     In this report and recommendation, Richard's grounds for relief are reproduced as written.

7

In February 2023, Richard filed a pro se motion for relief from judgment, arguing that the trial court never served him with its September 2021 ruling denying his petition. Doc. 9-1, at 471. Ultimately the Ohio court of appeals determined that Richard had not been served and accepted Richard's appeal of the trial court's post-conviction petition ruling. Doc. 33-1, at 21. In his appeal, Richard raised the following assignments of error:

> 1. The trial court abused its discretion by applying res judicata to deny review.

> 2. The trial court abused its discretion by denying review without, at a minimum, conducting an evidentiary hearing.

*Id.* at 124. The State filed a response, *id.* at 202, and Richard filed a reply, *id.* at 210. On August 18, 2025, the Ohio court of appeals affirmed the trial court's judgment, finding that Richard's claims were barred by res judicata. *Id.* at 218; *State v. Richard*, 2025-Ohio-2943, 2025 WL 2391079 (Ohio Ct. App. Aug. 18, 2025).

In September 2025, Richard timely appealed to the Ohio Supreme Court. Doc. 33-1, at 229. In his memorandum in support of jurisdiction, Richard raised the following proposition of law:

> Where a claim of ineffective assistance of counsel depends upon facts established by evidence *de hors* the record, including a defendant's affidavit showing counsel's failure to investigate and preserve an IAD violation informed of and factually relayed, res judicata does not apply.

8

*Id.* at 232. On November 25, 2025, the Ohio Supreme Court declined under its rule of practice 7.08(B)(4) to accept jurisdiction of Richard's appeal. *Id.* at 238.

*Federal habeas corpus petition*

In March 2023, Richard filed a pro se federal habeas corpus petition.[3] Doc. 1. In his Petition, he raises the following grounds for relief:

> **Ground one**: The state court's adjudication of Mr. Richard's claim that insufficient evidence existed to sustain conviction on Count Eight, which charged corrupting another with drugs, resulting in serious bodily injury, in violation of R.C. § 2925.02(A)(3), involved an unreasonable application of the facts, and resulted in a decision contrary to, and involved an unreasonable application of, *Jackson v. Virginia*, 443 U.S. 307 (1979).
>
> **Ground two**: The state court's adjudication of Mr. Richard's claim that his constitutional and statutory rights to a speedy trial were violated, including the right to a speedy trial right conferred by the Interstate Agreement on Detainers Act, involved an unreasonable application of the facts, and resulted in a decision contrary to, and involved an unreasonable application of, *United States v. Mauro*, 436 U.S. 340 (1978), and *Fex v. Michigan*, 507 U.S. 43 (1993).
>
> **Ground three**: The state court' adjudication of Mr. Richard's claim that trial counsel performed unreasonably by failing to review the record of arraignment and discover and present facts which were essential to a viable motion to dismiss, under R.C. § 2963.30, Article IV(e), involved an unreasonable application of the facts, and resulted in a decision contrary to, and involved an

---

[3]     In October 2023, Richard obtained habeas counsel. Doc. 10.

unreasonable application of, *Strickland v. Washington*, 466 U.S. 669 (1984).

**Ground four:** The state court's adjudication of Mr. Richard's claim that trial counsel performed deficiently by failing to discover and object to prosecutorial misconduct, relating to the false representations of Prosecutor Owen, regarding the date he and his office received and reviewed Mr. Richard's R.C. § 2963.30, Article III(a), request, involved an unreasonable application of the facts, and resulted in a decision contrary to, and involved an unreasonable application of, *Strickland v. Washington*, 466 U.S. 669 (1984).

**Ground five:** The state court's adjudication of Mr. Richard's claim that trial counsel performed deficiently by failing to object, under the R.C. § 2963.30, Article III(c), based on the violation which occurred as a result of the failure of the Warden having custody of Mr. Richard to process his Article III(a) request in a timely manner, involved an unreasonable application of the facts, and resulted in a decision contrary to, and involved an unreasonable application of, *Strickland v. Washington*, 466 U.S. 669 (1984).

**Ground six:** The state court's adjudication of Mr. Richard's claim that trial counsel performed unreasonably by failing to investigate and present available facts which would have established a denial of counsel at arraignment which prejudicially affected Mr. Richard's substantial rights, involved an unreasonable application of the facts, and resulted in a decision contrary to, and involved an unreasonable application of, *Strickland v. Washington*, 466 U.S. 669 (1984).

Doc. 1, at 2–4. The Respondent filed a Return of Writ, Doc. 9, and a Supplemental Return of Writ,[4] Doc. 33. Richard has not filed a traverse.

**Legal Standard**

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104–132, 110 Stat. 1214, petitioners must meet certain procedural requirements to have their claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). But when state court remedies are no longer available, procedural default rather than exhaustion applies. *Id.*

*Exhaustion*

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. §

---

[4] The Court granted Richard's motion to stay his petition so that he could exhaust certain of his claims. Doc. 29. The Court later reinstated Richard's case, ordered the Warden to file a supplemental return, and gave Richard an opportunity to file a traverse.

2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b),(c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts") (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)). A constitutional claim for relief must be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845–48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). And a habeas petitioner must present both the factual and legal underpinnings of the claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the "petitioner must present his claim to the state courts as a federal constitutional issue— not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).

*Procedural default*

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim by failing "to comply with state procedural rules in presenting [the] claim to the appropriate state court." *Id*. In *Maupin v. Smith*, the Sixth Circuit directed courts to consider four factors when determining whether a claim is barred on habeas corpus review due to a

12

petitioner's failure to comply with a state procedural rule: whether (1) there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) the state court enforced the procedural rule; (3) the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 847). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id.* While the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review, *Williams*, 460 F.3d at 806.

13

To overcome a procedural bar, petitioners must show cause for the default and actual prejudice that resulted from the alleged violation of federal law that forms the basis of their challenge, or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

*Merits review*

If a state's courts adjudicated the merits of a claim, a habeas petitioner may obtain habeas relief under 28 U.S.C. § 2254, if the petitioner can establish one of two predicates. To establish the first predicate, the petitioner "must identify a 'clearly established' principle of 'Federal law' that" has been established by a holding of the Supreme Court. *Fields v. Jordan*, 86 F.4th 218, 231 (6th Cir. 2023) (en banc); *see* 28 U.S.C. § 2254(d)(1). The petitioner must then show that state's court's adjudication "was *contrary to*," or "involved an *unreasonable application* of" that "clearly established" precedent. 28 U.S.C. § 2254(d)(1) (emphasis added); *see Fields*, 86 F.4th at 232.

To establish the second predicate, the petitioner must show that the state's court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or" based on "a set of

14

materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A]n 'unreasonable application of'" the Court's holdings is one that is "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)).

"[A] 'clearly established' principle of 'Federal law' refers to the "holdings," not "dicta," of the Supreme Court's decisions. *Fields*, 86 F.4th at 231 (quoting *White*, 572 U.S. at 419). A state court is not required to cite Supreme Court precedent or reflect an "awareness" of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *see White*, 572 U.S. at 426 ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.").

In determining whether the state court's decision involved an unreasonable application of law, the Court uses an objective standard. *Williams*, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

**Discussion**

*Ground one fails on the merits*

In ground one, Richard challenges the Ohio court of appeals' rejection of his sufficiency-of-the-evidence claim. Doc. 1, at 2. Respondent argues that ground one fails on the merits. Doc. 33, at 24.

When reviewing a claim that a petitioner's conviction is not supported by sufficient evidence, the court asks "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Cavazos v. Smith*, 565 U.S. 1, 7 (2011). The court defers to the trier-of-fact's determination. *Brown v. Konteh*, 567 F.3d

16

191, 205 (6th Cir. 2009). The standard is not whether the trier-of-fact made the correct guilt or innocence determination, but whether it made a rational decision to convict or acquit. *Herrera v. Collins*, 506 U.S. 390, 402 (1993). The court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the [fact-finder]." *Brown*, 567 F.3d at 205; *see also Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (internal quotations and citations omitted); *see also Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007) ("circumstantial evidence is entitled to equal weight as direct evidence").

On federal habeas review, an additional layer of deference applies. *Brown*, 567 F.3d at 205; *see Coleman v. Johnson*, 566 U.S. 650, 651 (2012). So even if this Court were to conclude that a rational trier-of-fact could not have found Richard guilty beyond a reasonable doubt, the Court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Brown*, 567 F.3d at 205; *see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

The Ohio court of appeals considered Richard's claim as follows:

> {¶59} In his third and fourth assignments of error, Richard argues that his that his corrupting-another-with-drugs conviction under Count Eight is based on insufficient evidence and is against the manifest

17

weight of the evidence. In particular, in his third assignment of error, Richard argues that the State presented insufficient evidence that his corrupting-another-with-drugs conviction under Count Eight is based on insufficient evidence because the State presented insufficient evidence that he "*furnished* Thompson with the heroin that caused his overdose * * *." (Emphasis added.) (Appellant's Brief at 20). In his fourth assignment of error, he specifically argues that the weight of the evidence shows that Aaron "Stanley" [("Stanley") w]as the drug supplier, not Richard * * *." (*Id.* at 22).

### Standard of Review

{¶60} Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997). Thus, we address each legal concept individually.

{¶61} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, ¶ 25 (1st Dist.). *See also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19 ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the

18

evidence."), citing *Thompkins* at 386.

\* \* \*

**Sufficiency of the Evidence Analysis**

{¶63} We begin by addressing Richard's sufficiency-of-the-evidence argument as it relates to his corrupting-another-with-drugs conviction under Count Eight. The offense of corrupting another with drugs is codified under R.C. 2925.02 and provides, in relevant part:

> (A) No person shall knowingly do any of the following:
>
> \* \* \*
>
> (3) By any means, administer or furnish to another or induce or cause another to use a controlled substance, and thereby cause serious physical harm to the other person, or cause the other person to become drug dependent.

R.C. 2925.02(A)(3).

{¶64} Because it is the only element that Richard challenges on appeal, we will address only the furnish element of the offense. Although, the term "furnish" is not defined by the Revised Code, the term was defined for the jury to mean to "provide, supply, or give access to." (Aug. 17, 2020 Tr., Vol. V, at 818). *Accord State v. Patterson*, 11th Dist. Trumbull No. 2013-T-0062, 2015-Ohio-4423, ¶ 86. In other words, our sister appellate districts have concluded that, to be guilty of corrupting another with drugs (by *furnishing* a controlled substance), it is of no consequence whether the controlled substance is sold or delivered directly to a victim, provided that the sale gave the victim access to the controlled substance. *See State v. Price*, 8th Dist. No. 107096, 2019-Ohio-1642, ¶ 51; *Patterson* at ¶ 86 ("It does not matter if the heroin was sold or delivered

19

directly to [a third party], provided that the sale gave [the victim] access to it.").

{¶65} In support of his sufficiency-of-the-evidence challenge, Richard argues that a rational trier of fact could not have found that he was involved in the drug transaction involving Thompson because "there was no evidence whatsoever that Richard ever provided Thompson with any drugs." (Appellant's Brief at 20). The record belies Richard's argument. Indeed, viewing the evidence in a light most favorable to the prosecution, Richards's corrupting-another-with-drugs conviction under Count Eight is based on sufficient evidence.

{¶66} Importantly, the State may establish the elements of a crime with direct or circumstantial evidence. *State v. Miller*, 8th Dist. Cuyahoga No. 103591, 2016-Ohio-7606, ¶ 60, citing *State v. Durr*, 58 Ohio St.3d 86, 92 (1991). "'Circumstantial evidence' is the 'proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning or other facts.'" *State v. Lawwill*, 12th Dist. Butler No. CA2007-01-014, 2008-Ohio-3592, ¶ 12, quoting *State v. Wells*, 12th Dist. Warren No. CA2006-02-029, 2007-Ohio-1362, ¶ 11, citing *State v. Griesheimer*, 10th Dist. Franklin No. 05AP-1039, 2007-Ohio-837, ¶ 26. Circumstantial evidence has no less probative value than direct evidence. *Griesheimer* at ¶ 26, citing *Jenks* at paragraph one of the syllabus. *See also State v. Heinish*, 50 Ohio St.3d 231, 238 (1990) ("This court has long held that circumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt."); *Miller* at ¶ 61 (stating that "circumstantial evidence alone is sufficient to support a conviction"), citing *State v. Coleman*, 8th Dist. Cuyahoga No. 102966, 2016-Ohio-297, ¶ 22. "'[A]ll that is required of the jury is that it weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt.'" *Miller* at ¶ 61, quoting *Jenks* at 272. "''Circumstantial evidence is not only sufficient, but

20

may also be more certain, satisfying, and persuasive than direct evidence.""" *Id.*, quoting *State v. Hawthorne*, 8th Dist. Cuyahoga No. 96496, 2011-Ohio-6078, ¶ 9, quoting *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330, 81 S.Ct. 6 (1960).

{¶67} Accordingly, based on our review of the record, we conclude the State presented sufficient (circumstantial) evidence at trial that Richard knew that he gave Thompson access to heroin. *Compare Price*, 2019-Ohio-1642, at ¶ 51 (concluding that "[t]he state presented sufficient evidence that showed Price knew he was giving the victim access to heroin and fentanyl by selling it to [a third party]"). In particular, at trial, the State presented the testimony of Stanley, who testified that he contacted Richard on October 17, 2017 to "acquire heroin" and to "make an introduction" between Richard and Thompson. (Aug. 14, 2020 Tr., Vol. IV, at 586-587). *See Price* at ¶ 50, citing *Patterson* at ¶ 86, *State v. Potee*, 12th Dist. Clermont No. CA2016-06-045, 2017-Ohio-2926, ¶ 31, and *State v. Jones*, 5th Dist. Licking No. 05 CA 59, 2006-Ohio-916, ¶ 46. He clarified that "[w]henever [he] spoke to Mr. Richard, [he] was calling to acquire heroin" and "that's what [he] was wanting then." (Aug. 14, 2020 Tr., Vol. IV, at 586). Stanley further testified that Richard appeared at his apartment later that evening and that he introduced Richard to Thompson. (*Id*. at 595, 605). After introducing the two men, Stanley "bowed out and went to the restroom" for "a few minutes." (*Id*. at 605-606). Thereafter, "Richard said he had to leave." (*Id*. at 606).

{¶68} Furthermore, the State presented surveillance-photo evidence corroborating that Richard and Thompson were at Stanley's apartment during the same time period. Specifically, State's Exhibits 36 and 48 depict Thompson arriving at Stanley's apartment at 6:07 p.m. and departing Stanley's apartment at 7:57 p.m., respectively. Likewise, State's Exhibit 43 and depicts Richard entering Stanley's apartment building at 7:34 p.m.

and State's Exhibits 46 and 47 depict Richard departing the building at 7:44 p.m. (*See* State's Exs. 40-43, 45-47).

{¶69} The State also presented evidence that Thompson was found unconscious on the floor his bedroom by his parents at approximately 10:00 p.m. on October 17, 2017. (Aug. 13, 2020 Tr., Vol. III, at 520, 533). According to Cobern Thompson ("Cobern"), Thompson's father, "a needle [was] laying on the floor" next to Thompson. (*Id.* at 521). Cobern further testified that Thompson left the residence that evening at approximately 5:45 p.m. and returned at approximately 8:00 p.m. (*Id.* at 521-522). Thompson later died as a result of "[a]cute heroin toxicity." (Aug. 12, 2020 Tr., Vol. II, at 314). (*See also* State's Ex. 33). Based on the totality of this evidence, we conclude that a rational trier of fact could have found that Richard furnished Thompson heroin. Consequently, Richard's corrupting-another-with-drugs conviction under Count Eight is based on sufficient evidence.

*Richard*, 2021 WL 3855301, at *11–13.

Richard argues that only circumstantial evidence was presented at trial, and that "[n]o evidence established, beyond a reasonable doubt, that, on the date and time in question, … Richard sold, furnished, or offered drugs to decedent Thompson (or, for that matter, Stanley)." Doc. 1, at 30–31. Richard underscores the point that at trial, Stanley did not testify that he saw Richard provide Thompson with drugs or that he even heard the two of them talking about drugs. *Id.* Rather, Stanley was in his bathroom doing drugs, while Richard and Thompson were alone in the other room watching a basketball game. *Id.* Richard also points out that Thompson died four to five hours after leaving Stanley's house, and that what Thompson did and who he saw in those

22

unaccounted-for hours remains a mystery. *Id*. Richard submits that his "DNA was not present"—although he doesn't dispute that he was at Stanley's house—and that Stanley was Thompson's drug supplier long before Richard met him. *Id*. at 31. Finally, Richard asserts that Thompson and Stanley were "lifelong addicts, addicted to heroin, before … Richard knew of or met them," and that Stanley received immunity for his testimony against Richard. *Id*. at 31–32; *see also id*. at 34–36.

As the Ohio court of appeals explained, circumstantial evidence alone is sufficient to support a conviction. *Richard*, 2021 WL 3855301, at *12; *see Johnson*, 200 F.3d at 992. And on sufficiency review, the court does not evaluate the credibility of witnesses, *Brown*, 567 F.3d at 205, so Richard's suggestion that Stanley was not credible, Doc. 1, at 31–31, is unavailing. Moreover, the jury heard Stanley admit that he was a long-time drug user and that he agreed to testify in exchange for the State dropping charges against him. Doc. 27-4, at 26–27, 59–60. Finally, although Thompson died at his parents' house around 10:00 p.m., surveillance video showed him leaving Stanley's residence at 7:57 p.m., and Thompson's father stated that Thompson arrived home at about 8:00 p.m. *Richard*, 2021 WL 3855301, at *13. So there was no mysterious four-to-five hour, unaccounted-for window of time during which Thompson could have gone to other places to obtain drugs from other people.

Next, Richard argues that the Ohio court of appeals' decision was based an unreasonable determination of the facts. Doc. 1, at 33. He asserts that he hadn't met Thompson before that October day and that Thompson was addicted to heroin before Richard met him. *Id.* But neither of these facts have any bearing on whether Richard furnished heroin to Thompson on the day they met at Stanley's residence.

Richard also argues that the Ohio court of appeals' decision was an unreasonable application of the Supreme Court holding in *Jackson*. Doc. 1, at 33. He asserts that the Ohio court of appeals, reciting Ohio law, wrote that the word *furnishing* included a situation in which a defendant did not directly provide the victim drugs, but also when the defendant provided drugs to a third party who, in turn, provided the drugs to the victim. *Id.* Richard submits that there was no evidence showing that he provided drugs to Stanley, who would have been the third-party in the scenario described by the Ohio court of appeals. *Id.*

But the Ohio court of appeals cited the third-party scenario as a description of all that the word *furnishing* in the corrupting-another-with-drugs statute encompasses. *Richard*, 2021 WL 3855301, at *12 (citing Ohio Rev. Code 2925.02(A)(3) and discussing cases). The court highlighted evidence showing that Stanley had obtained drugs in the past from Richard; Thompson visited Stanley's residence and said that he wanted drugs; Stanley therefore called Richard, who went to Stanley's residence; Richard and Thompson were

24

alone together at Stanley's residence while Stanley was in the bathroom using drugs; shortly thereafter, Richard left Stanley's residence and then Thompson left Stanley's residence; Thompson promptly returned home; and hours later Thompson used heroin and died. *Id*. at 13. The court concluded that "a rational trier of fact could have found that Richard furnished Thompson heroin." *Id*. This would be true under even the broadest meaning of the word *furnishing* under Ohio law—whether the jury found that Richard directly provided drugs to Thompson, or that Richard indirectly provided drugs to Thompson via Stanley.[5] The Ohio court of appeals' finding that there was sufficient evidence to support Richard's conviction of corrupting another with drugs was not an unreasonable application of the *Jackson* sufficiency standard.

Finally, Richard argues that the Ohio court of appeals impermissibly "pil[ed] inference upon inference." Doc. 1, at 36. But he doesn't describe what inferences he believes the court "pil[ed]." There was only one inference—that Richard furnished drugs to Thompson when the two were alone together at Stanley's residence. The rest of the evidence—showing that Stanley historically contacted Richard only when he wanted to buy heroin; Thompson went to Stanley's and said he wanted drugs; Stanley asked Richard to come

---

[5] The Ohio court of appeals discussed this third-party definition of *furnishing* because at trial and on appeal, Richard argued that Stanley was the person who provided the drugs to Thompson. *See, e.g.*, Doc. 27-4, at 72; *Richard*, 2021 WL 3855301, at *13 (discussing Richard's manifest-weight argument and stating that "Richard argues that the evidence identifying him as the person who furnished Thompson heroin is outweighed by the evidence that Stanley was the person who furnished Thompson heroin.").

over; Richard went to Stanley's for ten minutes and was alone with Thompson; and then Thompson went home, used heroin, and died, *Richard*, 2021 WL 3855301, at \*13—are facts, not inferences. Ground one fails on the merits.

*Ground two fails on the merits*

In ground two, Richard argues that the Ohio court of appeals unreasonably applied the facts and the law when it rejected his speedy trial claim, which involved in part the application of the Interstate Agreement on Detainers Act (IAD).[6] Doc. 1, at 2, 37. Respondent argues that ground two is not cognizable and fails on the merits. Doc. 33, at 32–45.

Richard's speedy-trial claim fails on the merits.[7] The Sixth Amendment

---

[6]    Congress enacted the IAD in 1970, "joining the United States and the District of Columbia as parties to the … Agreement …, which has also been enacted by 46 States." *U.S. v. Mauro*, 436 U.S. 340, 343 (1978). The IAD "is designed 'to encourage the expeditious and orderly disposition of . . . charges [outstanding against a prisoner] and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints.'" *Id*. Ohio enacted the IAD, which is codified at Ohio Revised Code § 2963.30.

[7]    Respondent cites *Browning v. Folz*, 837 F.2d 276, 283 (6th Cir. 1988), in support of his assertion that an IAD claim is not cognizable. Doc. 33, at 32–33. In *Browning*, the Court held that a violation of the IAD "is not a basis for habeas corpus relief." 837 F.2d at 283. But in *Browning*, the Court discussed a stand-alone IAD violation—the petitioner had not alleged a Sixth Amendment speedy trial violation. *Id*. Here, ground two alleges a constitutional speedy trial violation. Doc. 1, at 2; *see Reed v. Farley*, 512 U.S. 339, 342, 353 (1994) (holding that a violation of the IAD's *statutory* 120-day limitation is not cognizable "when the defendant registered no objection to the trial date at the time it was set, and suffered no prejudice attributable to the delayed commencement" and rejecting the petitioner's *constitutional* speedy trial claim because he failed to show prejudice). Because Richard alleged a constitutional speedy trial violation that is in part based on a purported detainer, I consider his claim on the merits.

26

to the United States Constitution guarantees a defendant a "speedy and public trial," U.S. Const. Amend. VI, *Barker v. Wingo*, 407 U.S. 514, 515-516 (1972), and applies to the states through the Fourteenth Amendment, *Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967). In *Barker*, the Supreme Court refused to establish a set number of days that would constitute a violation of a defendant's speedy trial right. 407 U.S. at 523. Rather, the Court established a balancing test "in which the conduct of both the prosecution and the defendant are weighed." *Id.* at 530. Courts consider: (1) the length of the delay between the date of indictment or arrest, whichever is earlier, and the trial date; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. *Id.*, at 530; *United States v. Marion*, 404 U.S. 307, 320–21 (1971); *see also Brown v. Romanowski*, 845 F.3d 703, 712–13 (6th Cir. 2017). No one factor is dispositive. *Barker*, 407 U.S. at 533. Rather, the factors are related and must be considered together with any other relevant circumstances. *Id.*; *Brown*, 845 F.3d at 712. And, as with other fundamental rights, defendants may knowingly and voluntarily waive their right to a speedy trial. *Barker*, 407 U.S. at 529.

In Ohio, state courts consider the speedy trial provisions found in the Ohio Revised Code, which Ohio courts consider coextensive with the Sixth Amendment speedy trial requirement. *Brown v. Bobby*, 656 F.3d 325, 330 (6th Cir. 2011).

27

The Ohio court of appeals considered Richard's speedy trial claim as follows:

{¶11} In his first assignment of error, Richard argues that the trial court erred by denying his motions to dismiss the second superseding indictment (and the amended superseding indictment) alleging a post-indictment delay because his constitutional right to a speedy trial was violated. In particular, Richard contends only that his corrupting-another-with-drugs charge under Count Eight "should be dismissed on speedy trial grounds" since "[t]he original indictment was filed in April 2018 and trial was not held until August 2020, a total of two years and four months," and he was prejudiced by this delay. (Appellant's Brief at 12, 16).

**Standard of Review**

{¶12} "Appellate review of a trial court's decision on a motion to dismiss for a speedy-trial violation involves a mixed question of law and fact." *State v. Westerfield*, 3d Dist. Crawford No. 3-17-15, 2018-Ohio-2139, ¶ 17, citing *State v. James*, 4th Dist. Ross No. 13CA3393, 2014-Ohio-1702, ¶ 23. *See also State v. Johnson*, 4th Dist. Scioto No. 16CA3733, 2016-Ohio-7036, ¶ 19 ("Furthermore, we review a decision interpreting the [Interstate Agreement on Detainers ("IAD")] under a de novo standard of review."). "'Accordingly, a reviewing court must give due deference to the trial court's findings of fact if they are supported by competent, credible evidence but will independently review whether the trial court correctly applied the law to the facts of the case.'" *State v. Gartrell*, 3d Dist. Marion No. 9-14-02, 2014-Ohio-5203, ¶ 104, quoting *State v. Hansen*, 3d Dist. Seneca No. 13-12-42, 2013-Ohio-1735, ¶ 20, citing *State v. Masters*, 172 Ohio App.3d 666, 2007-Ohio-4229, ¶ 11 (3d Dist.). *See also Westerfield* at ¶ 17.

**Analysis**

{¶13} "An accused is guaranteed the constitutional right to a speedy trial pursuant to the Sixth and

28

Fourteenth Amendments of the United States Constitution and Ohio Constitution, Article I, Section 10." *State v. Ferguson*, 10th Dist. Franklin No. 16AP-307, 2016-Ohio-8537, ¶ 12, citing *State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, ¶ 32. "Although 'statutory and constitutional speedy trial [rights] are [generally] coextensive,' the constitutional right, as embodied in the Ohio Constitution and the United States Constitution, 'may be broader than the * * * statutory right' in some circumstances." *State v. Wagner*, 2d Dist. Miami No. 2020-CA-6, 2021-Ohio-1671, ¶ 14, quoting *State v. Kadunc*, 10th Dist. Franklin No. 15AP-920, 2016-Ohio-4637, ¶ 19.

{¶14} "'To determine whether a defendant has been deprived of [their] constitutional speedy-trial rights, a court must balance four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of a speedy-trial right, and (4) the prejudice to the defendant.'" *State v. Irish*, 3d Dist. Mercer No. 10-18-13, 2019-Ohio-2765, ¶ 25, quoting *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶ 88.

{¶15} "However, prior to engaging in any balancing, 'the court must make a threshold determination concerning the length of [the] delay.'" *Id*. at ¶ 26, quoting *Adams* at ¶ 89. "'"Until there is some delay *which is presumptively prejudicial*, there is no necessity for inquiry into the other factors that go into the balance."'" (Emphasis sic.) *Id*., quoting *State v. Hull*, 110 Ohio St.3d 183, 2006-Ohio-4252, ¶ 23, quoting *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182 (1972). "A delay becomes presumptively prejudicial as it approaches one year in length." *Adams* at ¶ 90, citing *Doggett v. United States*, 505 U.S. 647, 652, 112 S.Ct. 2686 (1992), fn. 1.

{¶16} In this case, even if we assume without deciding that Richard's corrupting-another-with-drugs conviction under Count Eight "relate[s] back to the original April 2018 indictment for purposes of evaluating speedy trial," Richard's constitutional

29

right to a speedy trial was not violated. (Appellant's Brief at 11). *See Adams* at ¶ 84 (noting that "[a] later indictment is not subject to the speedy-trial timetable of an earlier indictment or arrest 'when additional criminal charges arise from facts different from the original charges, or the state did not know of these facts at the time of the initial indictment' or earlier arrest"), quoting *State v. Baker*, 78 Ohio St.3d 108, 110 (1997). Here, the delay from the issuance of the indictment until Richard was brought to trial was approximately 28 months (April 5, 2018 to August 11, 2020). This delay weighs in favor of Richard and is long enough to be deemed "presumptively prejudicial," which necessitates consideration of the second, third, and fourth factors to determine whether he was deprived of his constitutional speedy-trial rights. *See Wagner* at ¶ 25, citing *Barker* at 530 and *Adams* at ¶ 88. Nevertheless, while the 28-month delay exceeded the one-year prescription, the first factor's weight is negligible (for reasons more fully explained below) since it did not result in a significant infringement on Richard's liberty. *See State v. Triplett*, 78 Ohio St.3d 566, 569 (1997).

{¶17} Accordingly, we will address the next factor— the reason for the delay. "The inquiry into causation for the delay involves a sliding scale." *Irish* at ¶ 31. "'Where the state purposefully causes a delay, hoping to gain some impermissible advantage at trial, this factor would weigh heavily against the state and in favor of dismissal.'" *Id.*, quoting *State v. Hubbard*, 12th Dist. Butler No. CA2014-03-063, 2015-Ohio-646, ¶ 19, citing *Doggett* at 656. "In contrast, where the defendant caused or contributed to the delay, this factor would weigh significantly against him." *Id.* "Finally, '[a] more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered * * *.'" *Id.*, quoting *Barker* at 531. "'"Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground."'" *Id.*, quoting *Hubbard* at ¶ 19, quoting *Doggett* at 656-657. "'"Although

30

negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun.'"" *Id.*, quoting *Hubbard* at ¶ 19, quoting *Doggett* at 657.

{¶18} Here, Richard argues that "a large portion of the delay is directly attributable to the State" because it "should not have taken three months" to serve him with the indictment and the warrant and because the State's "neglect resulted in another five months of delays" "after Richard filed his IAD motion." (Appellant's Brief at 14). In other words, Richard challenges *only* the delay between the indictment and the time he arrived in Ohio to face trial. Accordingly, we will address only that period of delay under the second factor. In our review of the second factor, we cannot find any evidence in the record to suggest that the State intentionally caused that delay, even though the State concedes that it may have been negligent in causing some delay during that time period.

¶19} Indeed, our review of the record in this case reveals that a warrant for Richard's arrest was returned on April 6, 2018—the day after the indictment was issued in this case—with instructions for personal or residential service on Richard at 308 Carner Avenue in Marion or at the Multi-County Jail in Marion. (Doc. Nos. 2, 3). Yet, after attempting to personally serve Richard, the warrant was returned on June 28, 2018 indicating that Richard did "not live at [that] address." (Doc. No. 6). Nevertheless, a second warrant was issued on July 17, 2018 with instructions for personal or residential service on Richard at a federal prison in West Virginia. (Doc. No. 7). Thereafter, personal service on Richard was perfected at the federal prison on July 27, 2018. (Doc. No. 8).

{¶20} Our review of the record reflects that Richard pleaded guilty in a federal case on June 12, 2018 and

31

was sentenced to 21 months in federal prison on June 15, 2018. (Doc. No. 129, Exs. B, C). Thus, and contrary to Richard's argument on appeal, we cannot say that the record supports that the State willfully refused to take the appropriate steps to determine Richard's location between April and July 2018.

{¶21} Moreover, we cannot say that the State intentionally caused a delay by failing to respond to Richard's IAD motion. "Although codified at R.C. 2963.30, the IAD is 'a congressionally sanctioned interstate compact * * * and thus is a federal law subject to federal construction.'" *State v. Wells*, 94 Ohio App.3d 48, 52 (10th Dist.1994), quoting *Carchman v. Nash*, 473 U.S. 716, 719, 105 S.Ct. 3401 (1985), and citing *Cuyler v. Adams*, 449 U.S. 433, 436-442, 101 S.Ct. 703 (1981).

{¶22} "The IAD outlines two procedures by which a prisoner against whom *a detainer has been lodged* may be transferred to the temporary custody of another state for disposition of charges pending there." (Emphasis added.) *State v. Black*, 142 Ohio St.3d 332, 2015-Ohio-513, ¶ 8. "'One of these procedures may be invoked by the prisoner; the other by the prosecuting attorney of the receiving State.'" *Id.*, quoting *State. Cuyler*, 449 U.S. 433, 444, 101 S.Ct. 703 (1981).

{¶23} Under the prisoner-initiated procedure outlined in the statute, "a federal prisoner must be brought to trial within 180 days following the delivery of written notice to the appropriate trial court *and* prosecutor's office accompanied by" documentation outlined in Article III(a) of the IAD. (Emphasis added.) *State v. Barrett*, 191 Ohio App.3d 245, 2010-Ohio-5139, ¶ 10 (8th Dist.), citing R.C. 2963.30, Article III(a). Specifically, "Article III(b) requires the prisoner to send written notice requesting final disposition to the 'warden, commissioner of corrections or other official having custody of him.'" *Id.*, quoting R.C. 2963.30, Article III(b). This official is then required to forward the written notice and the accompanying documentation

32

"to the appropriate prosecuting official and court by *registered or certified mail, return receipt requested.*" (Emphasis added.) R.C. 2963.30, Article III(b).

{¶24} Although this official "must promptly inform the *prisoner* of any detainer as well as the prisoner's rights in making a request for final disposition," there is *no* duty under the IAD "on the part of the state to promptly notify prisoners of pending indictments." (Emphasis added.) *Black* at ¶ 9; *State v. Wells*, 110 Ohio App.3d 275, 281 (10th Dist.1996). *See also State v. Kopietz*, 6th Dist. Lucas No. L-19-1037, 2019-Ohio-5277, ¶ 19 (declining "to impose an implied obligation on the state to file a detainer upon a defendant who is in custody of another state").

{¶25} "[T]he one-hundred-eighty-day time period set forth in R.C. 2963.30 * * * begins to run when a prisoner substantially complies with the requirements of the statute set forth in Article III(a) and (b) thereof." *State v. Mourey*, 64 Ohio St.3d 482, 485 (1992). "'Substantial compliance' requires the defendant to do "everything that could be reasonably expected.'" *Barrett*, 191 Ohio App.3d 245, 2010-Ohio-5139, at ¶ 11, quoting *State v. Quinones*, 168 Ohio App.3d 425, 2006-Ohio-4096, ¶ 17 (8th Dist.), quoting *State v. Ferguson*, 41 Ohio App.3d 306, 311 (10th Dist.1987).

{¶26} "Under the prosecutor-initiated procedure outlined in the statute, the receiving state has 120 days after the prisoner's arrival in the state to bring the prisoner to trial." *Black* at ¶ 10, citing R.C. 2963.30, Article IV(c). Specifically, "[a]rticle IV applies when the prosecution files the detainer." *State v. Levy*, 8th Dist. Cuyahoga No. 83114, 2004-Ohio-4489, ¶ 36. *See also Black* at ¶ 10 ("To initiate the procedure, the prosecuting official in the receiving state must make a written request for temporary custody to the 'appropriate authorities of the state in which the prisoner is incarcerated.'"), quoting R.C. 2963.30, Article IV(a). "When the prosecution files the detainer, the speedy trial

33

begins to run after the inmate is returned to the requesting state." *Levy* at ¶ 36.

{¶27} Under either procedure, the IAD requires dismissal of criminal charges in three circumstances: (1) "if a trial is not held in the receiving state 'prior to the return of the prisoner to the original place of imprisonment'"; (2) "if the receiving state fails to accept temporary custody of the prisoner after filing a detainer" or (3) "[i]f a prisoner is not brought to trial within the time periods proscribed by Articles III and IV" of the IAD. *Black* at ¶ 11, quoting R.C. 2963.30, Article III(d), and citing Article IV(e); *Johnson*, 2016-Ohio-7036, at ¶ 35.

{¶28} To determine whether Article III or IV of the IAD are applicable to Richard's case, we must first determine whether the State lodged a detainer against Richard. *See State v. Hornsby*, 2d Dist. Montgomery No. 28322, 2020-Ohio-1526, ¶ 11. *See also Johnson* at ¶ 22. "Although the term 'detainer' is not defined in the IAD, the agreement, by its terms, makes the existence of a detainer a prerequisite to its applicability." *Wells*, 94 Ohio App.3d at 53, citing *United States v. Mauro*, 436 U.S. 340, 347-351, 98 S.Ct. 1834 (1978). *See also Johnson* at ¶ 24 ("The provisions of the IAD are triggered when a prosecutor files a detainer with the institution currently holding the prisoner.").

> Given the means employed in Article III to achieve the IAD's purpose, the detainer requirement of the IAD is simply to ensure that prison officials in a "sending state" have in fact received official notice of criminal charges pending in another state against an inmate; it is not intended to impose technical requirements regarding the form of that notice, as such technical requirements would frustrate the very purpose of the agreement by rendering it inapplicable in many cases where

34

> prison officials have in fact been notified that charges are pending in another state against one of their inmates.

*Wells* at 53.

{¶29} "Further, the history of the IAD reveals that both the drafters of the agreement and the United States Congress had broad and general understandings of what constituted a 'detainer' for purposes of the IAD." *Id.* Generally, "a detainer is 'a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when [the] release of the prisoner is imminent.'" *State v. Sanchez*, 110 Ohio St.3d 274, 2006-Ohio-4478, ¶ 19, quoting *Carchman*, 473 U.S. at 719. *See also Black* at ¶ 5. However, the United States Supreme Court (referring to the legislative history of the IAD) additionally noted that "detainer may be defined as a warrant filed against a person already in custody with the purpose of insuring that he will be available to the authority which has placed the detainer." (Citation omitted.) *Carchman* at 727.

{¶30} Even if we construe the definition of a detainer in the most liberal sense in relation to the indictment against Richard or the warrant for his arrest, none of the provisions under Article III or IV of the IAD are applicable to Richard's case. First, assuming without deciding that a detainer was properly placed against Richard in this case (to ultimately determine whether the State intentionally caused a delay), the provisions of Article III are inapplicable to Richard's case because Richard failed to follow the necessary steps to substantially comply with the requirements of Article III to invoke the right to be brought to trial within 180 days.

{¶31} In this case, Richard sent a written notice on January 3, 2019 to only the Marion County Clerk of

35

Courts by ordinary mail.[4] (*See* Doc. No. 9). Importantly, the record reflects that Richard did not send his notice to the Marion County Prosecutor's Office. And, because Richard did not send his notice to the Marion County Prosecutor's Office, he did not substantially comply with the requirements in the IAD. *Accord Levy*, 2004-Ohio-4489, at ¶ 32-35 (concluding that Levy did not substantially comply with the requirements in the IAD since Levy mailed his request to only the Cuyahoga County Common Pleas Court clerk's office by ordinary mail). Accordingly, Richard did not invoke the provisions of Article III of the IAD. Thus, the provisions of Article III are not applicable to Richard's case.

> [FN4] Richard sent a second written notice on April 25, 2019 to *only* the Marion County Clerk of Courts by ordinary mail. (Doc. No. 16).

{¶32} Consequently, since Richard failed to invoke Article III of the IAD, Article IV applies to his case (assuming without deciding that a detainer was properly placed). *Accord Levy* at ¶ 36 ("Accordingly, we conclude Levy failed to invoke Article III(a) or (b); therefore, Article IV applies."). Moreover, since Richard was not transferred from custody in West Virginia to custody in Ohio, the State's time to try him never began to run.[5] *Accord Hornsby*, 2020-Ohio-1526, at ¶ 12 (concluding that "Hornsby did not demonstrate that dismissal was appropriate under Article IV [since] the State's time to try him never began to run, because he was not transferred from custody in Indiana into custody in Ohio").

> [FN 5] Even though Richard asserts that he was brought to Ohio on June 17, 2019 under a detainer, this court cannot find any evidence in the record reflecting that assertion. (*See* Appellant's Brief at 1).

{¶33} Nevertheless, there is no evidence in the record reflecting that the indictment or the warrant

36

were served on the federal prison at which Richard was incarcerated, and neither presented a request that Richard be held so that he could be transferred into custody in Ohio for trial on the charges against him in Marion County. *Compare id.* at ¶ 13 ("Additionally, neither the indictment nor the warrant were served on Branchville Correctional Facility, and neither presented a request that Hornsby be held there so that he could later be transferred into custody in Ohio for trial on the charge against him here."). *See also Wells*, 94 Ohio App.3d at 54. "Neither the indictment nor the warrant, therefore, could have functioned as a detainer, because both failed to convey the request that is the defining characteristic of a detainer." *Hornsby* at ¶ 13, citing *State v. Smith*, 4th Dist. Ross No. 18CA3627, 2018-Ohio-5020, ¶ 30.

{¶34} Furthermore, even though the State is under no obligation to lodge a detainer against a defendant who is incarcerated in another state, the State assumes some negligence in attempting to bring Richard to Ohio to face the charges in Marion County. (*See* Appellee's Brief at 8); *Kopietz*, 2019-Ohio-5277, ¶ 19. *See also Black*, 142 Ohio St.3d 332, 2015-Ohio-53, at ¶ 9; *Wells*, 110 Ohio App.3d at 281. Specifically, the State concedes that (notwithstanding our conclusion that Richard failed to substantially comply with the requirements of the IAD to invoke the provisions of Article III), the trial court ordered it on January 16, 2019 to respond to Richard's January 3, 2019 written notice, and that it failed to respond until April 2019. (Appellee's Brief at 8). (*See also* Doc. Nos. 10, 14).

{¶35} Nevertheless, instead of proceeding under the prosecutor-initiated provisions of the IAD, the State filed a writ of habeas corpus ad prosequendum on April 18, 2019 with the Federal Bureau of Prisons requesting Richard to be returned to the trial court for purposes of arraignment. (*See* Doc. Nos. 13, 14, 15). However, this court has previously held that a writ of habeas corpus ad prosequendum does not constitute a detainer as described by the IAD. *See*

*State v. Dye*, 3d Dist. Crawford No. 3-92-47, 1993 WL 157728, *3-4 (May 14, 1993). *See also Mauro*, 436 U.S. 340, at syllabus.

{¶36} Therefore, based on the State's concession of some minor prosecutorial negligence, we conclude that such weighs in Richards' favor, if only somewhat, under the second factor. *See Irish*, 2019-Ohio-2765, at ¶ 35.

{¶37} Next, under the third factor, we consider Richard's assertion of his right to a speedy trial. "'The third factor addresses the timeliness and frequency of the defendant's assertions of his speedy-trial right.'" *Id*. at ¶ 36, quoting *State v. Rice*, 1st Dist. Hamilton No. C-150191, 2015-Ohio-5481, ¶ 27, citing *Barker*, 407 U.S. at 529. Here, the record reflects that Richard knew of the charges (at the latest) on July 27, 2018, when he was personally served with a copy of the indictment. (*See* Doc. No. 8). Yet, Richard failed to assert his right to a speedy trial until January 3, 2019, when he filed his first (defective) written notice attempting to invoke the provisions of Article III of the IAD. Even if the State properly lodged a detainer against Richard (and assuming that Richard's written notice was not defective), there is a five-month gap in time for which Richard bears some responsibility. *See Rice* at ¶ 27, citing *State v. Walker*, 10th Dist. Franklin No. 06AP-810, 2007-Ohio-4666, ¶ 31. Thus, we conclude that the third factor weighs in the State's favor.

{¶38} Finally, we consider the degree to which Richard was prejudiced by the delay. "In considering the prejudice suffered by a defendant, the Supreme Court of the United States has 'held that the inquiring court should assess prejudice "in light of the interests the speedy trial right was designed to protect."'" *Irish* at ¶ 38, quoting *State v. McCain*, 9th Dist. Wayne No. 15AP0055, 2016-Ohio-4992, ¶ 18, quoting *Barker* at 532. The speedy-trial right was designed to "'[1] to prevent oppressive pretrial incarceration; [2] to minimize anxiety and concern of the accused; and [3] to limit the possibility that the

38

defense will be impaired." *State v. Spencer*, 4th Dist. Scioto No. 15CA3718, 2017-Ohio-456, ¶ 36, quoting *Barker* at 532. """Of these forms of prejudice, 'the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.""" *Irish* at ¶ 38, quoting *State v. Stevens*, 3d Dist. Logan No. 8-14-09, 2014-Ohio-4875, ¶ 19, quoting *Doggett*, 505 U.S. at 654, quoting *Barker* at 532. "'Impairment of one's defense is also the most difficult form of prejudice to prove "because time's erosion of exculpatory evidence and testimony 'can rarely be shown.""" *Id.*, quoting *Stevens* at ¶ 19, quoting *Doggett* at 655, quoting *Barker* at 532.

{¶39} Here, Richard does not allege that his defense was impaired by the delay. Rather, he contends that "the prosecution's negligence deprived [him] of the opportunity for concurrent terms, caused him anxiety while waiting in federal prison, and resulted in additional oppressive incarceration after his federal prison term expired." (Appellant's Brief at 16). As to Richard's oppressive-incarceration argument, we note that the first interest protected by the right a speedy trial considers only whether Richard was subject to oppressive pretrial incarceration. In this case, Richard was incarcerated in federal prison in West Virginia during the preponderance of the timeframe relevant to Richard's speedy-trial claim. Consequently, Richard was not threatened with the prospect of oppressive pretrial incarceration since his liberty was already severely restrained. *Accord Irish* at ¶ 42.

{¶40} Furthermore, Richard's argument that he suffered prejudice because the State's delay cost him the possibility to serve the Marion County sentence concurrently with his federal sentence is likewise specious. In general, "'the theoretical and speculative loss of the opportunity for [a] defendant to serve the sentence on the pending charge concurrently with the sentence in another case' is insufficient to constitute substantial prejudice to the defendant." *McCain* at ¶ 19, quoting *Rice* at ¶ 32. *See*

39

*also Spencer* at ¶ 37 ("Losing his opportunity to bargain for concurrent sentences is based upon speculation and is not sufficient to show prejudice; there is no constitutional or statutory right to be given concurrent sentences."), citing *State v. Jones*, 4th Dist. Ross No. 95CA2128, 1996 WL 312469, *2 (June 4, 1996) and *Rice* at ¶ 32.

{¶41} Finally, we further reject Richard's contention that he endured "significant anxiety" from the delay. (Appellant's Brief at 15). Richard's "blanket statement, without more, that he suffered anxiety caused by the delay is insufficient to show the type of prejudice required for a violation of constitutional speedy-trial rights." *Hubbard*, 2015-Ohio-646, at ¶ 23, citing *State v. Glass*, 10th Dist. Franklin No. 10AP-558, 2011-Ohio-6287, ¶ 26 and *State v. Eicher*, 8th Dist. Cuyahoga No. 89161, 2007-Ohio-6813, ¶ 33. Altogether, because we conclude that Richard did not show any actual prejudice, the fourth factor weighs heavily in favor of the State. *See Irish* at ¶ 46.

{¶42} In sum, even though the first and second factors weigh slightly in Richard's favor, we conclude that the third and fourth factors weigh more heavily in favor of the State, outbalancing the first and second factors. Thus, after carefully considering the factors, we conclude that the delay in this case does not violate Richard's constitutional right to a speedy trial. Therefore, Richard's first assignment of error is overruled.

*Richard*, 2021 WL 3855301, at *2–8 (footnote omitted).

Richard first argues that the Ohio court of appeals' finding that the State didn't lodge a detainer against him was an unreasonable determination of the facts. Doc. 1, at 39. But Richard relies on the Ohio court of appeals' recitation of facts in support of his argument. *Id*. So what Richard objects to is the legal conclusion that the court drew from these facts.

Richard concedes that:

> a warrant for [his] arrest was returned on April 6, 2018—the day after the indictment was issued in this case—with instructions for personal or residential service on Richard at 308 Carner Avenue in Marion or at the Multi-County Jail in Marion. (Doc. Nos. 2, 3). Yet, after attempting to personally serve Richard, the warrant was returned on June 28, 2018 indicating that Richard did "not live at [that] address." (Doc. No. 6). Nevertheless, a second warrant was issued on July 17, 2018 with instructions for personal or residential service on Richard at a federal prison in West Virginia. (Doc. No. 7). Thereafter, personal service on Richard was perfected at the federal prison on July 27, 2018. (Doc. No. 8).

*Richard*, 2021 WL 3855301, at *4; Doc. 1, at 39. Richard concludes that "[u]nder these facts, a 'detainer,' as that term is used in the [IAD], codified in Ohio law at R.C. § 2963.30, Article III(a), was lodged no later than July 27, 2018; rendering the provisions of the [IAD] applicable." *Id*. But Article III discusses what a *prisoner* must do to trigger the 180-day limitations period in the IAD. *See* R.C. § 2963.30, Art. III(a); *Richard*, 2021 WL 3855301, at *5. The fact that the State served Richard with a warrant on July 27, 2018, doesn't show an act that Richard undertook to invoke the IAD.

Furthermore, the Ohio court of appeals found that the State "filed a writ of habeas corpus ad prosequendum," not a detainer, with the Federal Bureau of Prisons. *Richard*, 2021 WL 3855301, at *7. And a writ of habeas corpus ad prosequendum is not the same thing as a detainer, *see United States v. Mauro*, 436 U.S. 340, 360 (1978), as the Ohio court of appeals observed, *Richard*, 2021

41

WL 3855301, at *7 (citing *Mauro*). Richard has not shown that the Ohio court of appeals' finding—that the State filed a writ of habeas corpus ad prosequendum—was an unreasonable determination of the facts, and he hasn't shown that the Ohio court of appeals' legal conclusion was an unreasonable application of Supreme Court precedent.

Next, Richard argues that the Ohio court of appeals unreasonably determined the facts when it found that he failed to provide notice to the prosecutor of his intent to invoke his speedy trial right under Article III(a) of the IAD. Doc. 1, at 40. In support of his argument that the prosecutor was sufficiently notified, Richard relies on *State v. Marr*, 126 N.E.3d 333 (Ohio Ct. App. 2018). *Id*. at 40–41.

*Marr* doesn't help Richard here. First, because *Marr* doesn't represent United States Supreme Court precedent, whether the Ohio court of appeals unreasonably applied it is not relevant to this merits-based evaluation on federal habeas review. *See* 28 U.S.C. § 2254(d)(1).

Next, *Marr* was a case about whether the State violated the Ohio statute codifying the IAD. 126 N.E.3d at 334. But in his direct appeal, Richard did not allege a stand-alone IAD violation. Rather, Richard alleged that his "rights to a speedy trial under the Sixth Amendment and the Ohio Constitution were violated by post-indictment delay." Doc. 9-1, at 195, 208–13. So the Ohio court of appeals in Richard's case analyzed Richard's compliance with the IAD's requirements under one of the *Barker* speedy-trial factors, which is how

42

Richard had presented it. Doc. 9-1, at 208–13. And evaluating the *Barker* factors is what state courts do when faced with constitutional speedy trial claims. *Barker*, 407 U.S. at 530.

Finally, in *Marr*, the defendant "delivered a handwritten letter" in April 2017 to the court of common pleas advising the court that he was incarcerated at an Indiana correctional facility and requesting transportation to the county to resolve "an untried indictment against him." 126 N.E. at 335. "A copy of the letter was shortly thereafter provided to the … County Prosecutor." *Id*. In July 2017, the prosecutor "prepared and delivered forms requesting temporary custody of … Marr pursuant to Article IV of the [IAD]." *Id*. The court found that Marr substantially complied with the Ohio IAD statute because the letter he sent to the court in early 2017, which the court then sent to the prosecutor, was sufficient to trigger his IAD rights. *Id*. at 340.

But in *Marr*, unlike in Richard's case, the State only challenged whether Marr "properly filed" his letter with the court, and whether the contents of the letter were sufficient to trigger his rights under the IAD. *Id*. at 339. It didn't argue that Marr hadn't substantially complied by not delivering his letter to the prosecutor, and indeed it had stipulated that the letter "was … provided to" it. *Id*. at 335. Here, the State asserted that Richard hadn't substantially complied because he hadn't sent his notice to the prosecutor's office, *see* Doc. 9-1, at 252, and the Ohio court of appeals agreed, *Richard*, 2021 WL 3855301, at *6.

43

In any event, the Ohio court of appeals' determination on this issue was relevant to the second *Barker* factor—the reason for the delay. *Richard*, 2021 WL 3855301, at *4–7. And the court found that this factor *favored Richard*. *Id.* at *7. In doing so, the court explained that on January 16, 2019, the trial court directed the prosecutor to respond to Richard's notice, and that the prosecutor "failed to respond until April 2019." *Id.* So the Ohio court of appeals credited Richard's assertion that providing notice to the court in January 2019 was sufficient to provide notice to the prosecutor for purposes of evaluating the reason for the delay under *Barker*. *Id.* Richard's conclusion that the Ohio court of appeals failed to follow "established precedent, namely, *Marr*," Doc. 1, at 41, is not responsive to what the Ohio court of appeals actually found based on the claim that Richard presented.

Richard also argues that the Ohio court of appeals unreasonably applied *Fex v. Michigan*, 507 U.S. 43 (1993). Doc. 1, at 40. In *Fex*, the Court, on direct review, held that the 180-day clock in Article III(a) of the IAD begins to run not when the prisoner sends the notice, but when the notice "has actually been delivered to the court and prosecuting officer." 507 U.S. at 52. *Fex* didn't describe what it means to "actually … deliver" a notice to the prosecutor, so the Ohio court of appeals' decision did not mis-apply *Fex*. *See also White*, 572 U.S. at 426 ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies [Supreme Court] precedent; it does not require state courts to extend that precedent or license federal courts to treat

44

the failure to do so as error."). And, as explained above, the Ohio court of appeals credited Richard with having notified the prosecutor in January 2019 when it evaluated the second *Barker* factor.

Richard hasn't challenged the Ohio court of appeals' evaluation of the *Barker* factors or how the court of appeals ultimately weighed them. He hasn't shown that the Ohio court of appeals unreasonably determined the facts or unreasonably applied Supreme Court precedent. Ground two fails on the merits.

*Grounds three through six are procedurally defaulted*

Grounds three though six are ineffective-assistance-of-trial-counsel claims. In ground three, Richard alleges that trial counsel unreasonably failed to review the arraignment record to discover facts indicating a viable motion to dismiss under the IAD. Doc. 1, at 3. Ground four states that trial counsel was deficient for failing to "discover and object to prosecutorial misconduct" regarding the prosecutor's statements about when his office received Richard's IAD request. *Id.* Ground five alleges that trial counsel was deficient for failing to object to the federal prison warden's alleged failure to timely process Richard's IAD request.[8] *Id.* at 4. And ground six alleges that trial counsel

---

8    Richard's trial counsel did file a motion to dismiss the charges on the basis of IAD violations. Doc. 9-1, at 161–66. The trial court rejected Richard's motion, finding that Richard failed to substantially comply with the IAD's requirements because he didn't provide an address for service on the prosecutor despite the form providing space for an address. *See* Doc. 27-2, at 21–23.

45

unreasonably failed to investigate and present facts which would have shown that Richard was denied the right to counsel at his arraignment. *Id*. Respondent argues that all of these grounds are procedurally defaulted.

Richard raised the claims he presents in grounds three through six in his state postconviction petition. Doc. 9-1, at 411–17. The trial court denied Richard's petition on the basis of res judicata. *Id*. at 466–67. The Ohio court of appeals affirmed the trial court's judgment, agreeing that Richard's claims were barred by res judicata. Doc. 33-1, at 217–27. The Ohio court of appeals first observed that Richard "was not represented by the same attorney at trial and on direct appeal." Doc. 33-1, at 225. The court then explained that all of Richard's ineffective assistance of trial counsel claims were based on the state court record. *Id*. at 226 (stating that Richard's claims were based on trial court hearing transcripts and an affidavit "in which he made statements that were either cumulative of the information already in the record or unnecessary to litigating these claims."). The court therefore concluded that Richard's claims should have been raised on direct appeal and were barred by res judicata. *Id*. at 227.

Because all of Richard's ineffective assistance claims are based on the trial court record, *see* Doc. 1, at 41–52, they should have been raised on direct appeal, as the Ohio court of appeals found. *See Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001) ("Ohio courts have consistently held that claims that can be adjudicated based on facts in the record can only be presented on direct

46

appeal") (citing *State v. Lentz*, 639 N.E.2d 784, 785 (Ohio 1994)). The Sixth Circuit "has held that this rule is regularly and consistently applied by Ohio courts as required by the four-part *Maupin* test." *Id.* Because Richard didn't raise his ineffective assistance of trial counsel claims on direct appeal, they are procedurally defaulted. *See Buell*, 274 F.3d at 349.

Richard has not alleged cause or prejudice to excuse his procedural default. He can't claim as cause ineffective assistance of appellate counsel for failing to raise the claims on direct appeal, because he never litigated such a claim in state court. *See Edwards v. Carpenter*, 529 U.S. 446, 451–53 (2000) (explaining that ineffective assistance of appellate counsel can serve as cause to excuse a procedural default, but only if the ineffective assistance of appellate counsel claim is not itself procedurally defaulted). And Richard may not do so now, because any Ohio Appellate Rule 26(B) application to reopen to allege ineffective assistance of appellate counsel would have been due almost five years ago.[9] *See also Prieto v. Schweitzer*, No. 4:18-cv-222, 2019 WL 2605639, at *8, n.5 (N.D. Ohio May 31, 2019) (the petitioner's failure to file an Ohio Appellate Rule 26(B) application to reopen or provide any reason why he had not filed one procedurally defaulted any ineffective-assistance-of-appellate-counsel claims), *report and recommendation adopted*, 2021 WL 147049 (N.D.

---

[9]    A Rule 26(B) application to reopen is the method to raise ineffective assistance of appellate counsel. *See* Ohio App. R. 26(B)(1). An application must be filed "within ninety days from journalization of the appellate judgment [on direct appeal] unless the applicant shows good cause for filing at a later time." *Id.*

47

Ohio Jan. 15, 2021); *Rice v. Welch*, No. 3:10-cv-1916, 2014 WL 4794585, at *26 (N.D. Ohio Sept. 23, 2014) ("Rice does not claim to have filed a Rule 26 motion; nor does he argue that he could now do so given the relevant deadline, which passed over six years ago."). Moreover, this federal habeas case was stayed for almost two years while Richard exhausted his postconviction petition appeal. *See* Doc. 29; *non-document order*, 3/16/2026. Richard has not claimed that during this time he attempted to pursue a late Rule 26(B) application.

Finally, Richard has not alleged actual innocence to excuse his procedural default. Grounds three through six are procedurally defaulted.

*Richard's request for an evidentiary hearing is denied*

In his petition, Richard requests an evidentiary hearing. Doc. 1, at 52. For cause, he states that "a due process violation deprived [him] of the right to appeal the denial of his petition for post-conviction relief he would have otherwise exercised." *Id*. But after Richard filed this federal habeas petition, the Ohio court of appeals accepted his appeal of the trial court's judgment denying his postconviction petition. Doc. 33-1, at 21–22. So the basis for Richard's request for a hearing is moot.

Even so, 28 U.S.C. § 2254(e) provides that a state court's determination of the facts is presumed to be correct, and a petitioner must show clear and convincing evidence to rebut this presumption. 28 U.S.C. § 2254(e)(1). Section 2254(e)(2) states that if a petitioner failed in state court to develop the factual basis of a claim, the district court "shall not hold an evidentiary hearing on the

48

claim unless the applicant shows" that the claim relies on (1) "a new rule of constitutional law"; or (2) "a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A)(i),(ii). The petitioner must also show that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the [petitioner] guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B).

Richard hasn't "specified what could be discovered through an evidentiary hearing," so he hasn't shown that he is entitled to one. *See Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001). Moreover, all of Richard's postconviction claims are procedurally defaulted, barring court review. *See id.* I therefore deny Richard's motion for an evidentiary hearing.[10]

### Conclusion

For the reasons set forth above, I recommend that the Court deny Richard's Petition.

Dated: July 30, 2026

                 */s/ James E. Grimes Jr.*
                 James E. Grimes Jr.
                 U.S. Magistrate Judge

---

[10] In his petition, Richard also requested the appointment of counsel. Doc. 1, at 52. Thereafter, Richard retained counsel, Doc. 10, so this request is denied as moot.

49

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).